UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2023 Grand Jury

| UNITED STATES OF AMERICA, | CR 8:23-cr-00051-JVS |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1956(a)(1)(B)(i): Concealment Money Laundering; 18 U.S.C. §§ 981 and 982: Criminal Forfeiture] |
| MATTHEW HOANG HO, aka "Mat Hoang Ho," | |
| Defendant. | |

FILED
CLERK, U.S. DISTRICT COURT
5/2/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: TV DEPUTY

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1349]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

Defendant and Relevant Entities

1. Defendant MATTHEW HOANG HO, also known as "Mat Hoang Ho," was a resident of Jefferson County, Alabama, and Brevard County, Florida.

2. Co-Conspirator Anthony Hao Dinh was a resident of Orange County, California.

3. Global Prestige Company Inc. was an Alabama corporation registered in 2011. Defendant HO was the incorporator, director, and registered agent of Global Prestige.

4. Defendant HO controlled a business checking account in the name of Global Prestige with JPMorgan Chase Bank (the "Global Prestige Checking Account").

5. Prestige Property Investment Co., Inc. was a California corporation registered in 2004. Co-Conspirator Dinh incorporated Prestige Property and was the registered agent until April 2022.

The Paycheck Protection Program

6. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

7. As part of this effort, the SBA facilitated government-backed loans through banks, credit unions, and other lenders.

8. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic. One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

9. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative

of the business. The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. One such certification required the applicant to affirm that "[t]he [PPP loan] funds w[ould] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments." The applicant, through its authorized representative, was also required to acknowledge that "I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges." In the PPP loan application, the small business, through its authorized representative, was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP, and a business could not receive a loan of more than 2.5 times its average monthly payroll costs. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

    10. A PPP loan application was processed by a participating financial institution ("lender"). If a PPP loan application was approved, the participating lender would fund the loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

    11. PPP loan proceeds were required to be used by the business on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and

guidance, the interest and principal on the PPP loan was eligible for forgiveness if the business was eligible for the PPP loan it received, spent the loan proceeds on these permissible expense items within a designated period of time, and used a certain portion of the loan proceeds for payroll expenses.

The Economic Injury Disaster Loan Program

12. The Economic Injury Disaster Loan ("EIDL") Program was a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

13. The CARES Act authorized the SBA to provide EIDLs up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses applying for an EIDL.

14. To obtain an EIDL and an advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period extended from January 1, 2019, to January 31, 2020. Applicants certified that all the information in the application was true and correct to the best of their knowledge.

15. EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan was determined, in part, on the information

provided by the applicant about employment, revenue, and cost of goods, as described above.

16. Any funds issued under an EIDL or advance were issued directly by the SBA. EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

<u>Relevant Lending Institution</u>

17. PayPal, Inc. ("PayPal"), headquartered in California, was a financial institution that was an approved SBA lender of PPP loans.

B. <u>THE OBJECT OF THE CONSPIRACY</u>

18. Beginning no later than in or around April 2020 and continuing until at least in or around March 2021, in Orange County, within the Central District of California, and elsewhere, defendant HO conspired with Co-Conspirator Dinh and others known and unknown to the Grand Jury to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

C. <u>THE MANNER AND MEANS OF THE CONSPIRACY</u>

19. The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

    a. Defendant HO and Co-Conspirator Dinh, together with other co-conspirators, would make, and cause to be made, false statements to lenders, including PayPal, in connection with fraudulent applications for PPP and EIDL loans for Global Prestige, including false representations regarding the number of employees to whom the company had paid wages and false certifications that the loans would be used for permissible business purposes.

b. In connection with those applications, defendant HO and Co-Conspirator Dinh, together with other co-conspirators, would also electronically submit, and cause to be submitted, false documents to lenders, including PayPal, in support of the fraudulent PPP and EIDL loan applications, including false and fictitious tax documents.

c. At the time of these applications, defendant HO and Co-Conspirator Dinh knew that the representations regarding the numbers of employees and intended use of the loan proceeds were false and that the tax documents were fabricated. In making these false representations and submitting these fabricated documents, defendant HO and Co-Conspirator Dinh intended that the lenders, including PayPal, would rely on them to approve the applications and determine the amount to be disbursed.

d. Defendant HO and Co-Conspirator Dinh, together with other co-conspirators, would direct that PPP and EIDL loan proceeds be deposited into bank accounts that defendant HO controlled, including the Global Prestige Checking Account.

e. Defendant HO and Co-Conspirator Dinh, together with other co-conspirators, would then use the fraudulently obtained PPP and EIDL loan proceeds for their own personal benefit and for the benefit of their co-conspirators, including for expenses prohibited under the requirements of the PPP and EIDL programs. In order to conceal their misappropriation of these loan proceeds, defendant HO would write checks drawn on the loan proceeds in the Global Prestige Checking Account to Co-Conspirator Dinh, his companies, or Co-Conspirator Dinh's family member, with memo lines falsely describing the purpose of the checks as "rent" and "payroll." Then, Co-

Conspirator Dinh would transfer the funds back to defendant HO by writing checks on his personal account and the accounts of his companies to defendant HO and defendant HO's family members.

20. From in or around April 2020 and continuing until at least in or around March 2021, in furtherance of the conspiracy, defendant HO, together with Co-Conspirator Dinh and others known and unknown, submitted and caused to be submitted fraudulent EIDL and PPP loan applications seeking at least approximately $877,029.50, and actually received approximately $220,927 in PPP proceeds from PayPal based on the false and fraudulent statements, representations, and promises in the applications.

D.  OVERT ACTS

21. On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendant HO, together with Co-Conspirator Dinh and others known and unknown, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California and elsewhere:

Overt Act No. 1:   On April 6, 2020, defendant HO opened the Global Prestige Checking Account.

Overt Act No. 2:   On June 19, 2020, defendant HO submitted and caused to be submitted to PayPal an application in the name of Global Prestige and providing a business address that was the same address used by a company owned and operated by Co-Conspirator Dinh, seeking a PPP loan in the amount of $133,900, which application: (a) falsely represented that Global Prestige had six employees, including employees for whom it had paid wages and payroll taxes; and (b) falsely certified Global Prestige would use the loan proceeds only for permissible business purposes.

<u>Overt Act No. 3</u>:  On June 19, 2020, defendant HO submitted and caused to be submitted to PayPal false documents, including a fake Internal Revenue Service Form 941 for January 1, 2020, through March 31, 2020, in support of Global Prestige's June 19, 2020, PPP loan application to PayPal.

<u>Overt Act No. 4</u>:  On June 23, 2020, defendant HO caused PayPal to transfer approximately $133,900 into the Global Prestige Checking Account based on the fraudulent June 19, 2020, Global Prestige PPP loan application.

<u>Overt Act No. 5</u>:  In September 2020, defendant HO used the fraudulently obtained PPP loan proceeds to write a check drawn on the Global Prestige Checking Account to Co-Conspirator Dinh in the approximate amount of $9,862 disguised as "rent" that was deposited into a bank account controlled by Co-Conspirator Dinh on or about September 9, 2020.

<u>Overt Act No. 6</u>:  On July 15, 2021, defendant HO submitted and caused to be submitted a false and fraudulent loan forgiveness application to PayPal regarding the fraudulent June 19, 2020, Global Prestige PPP loan application in which defendant HO falsely claimed payroll costs of $103,906.66.

## COUNT TWO

[18 U.S.C. §§ 1343, 2(a)]

22. The Grand Jury re-alleges paragraphs 1 through 17 and 19 through and 21 of this Indictment here.

A. THE SCHEME TO DEFRAUD

23. Beginning no later than in or around April 2020, and continuing until at least in or around March 2021, in Orange County, within the Central District of California, and elsewhere, defendant HO, together with Co-Conspirator Dinh and others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, intended to devise, and participated in a scheme to defraud lenders, and to obtain money and property by means of material false pretenses, representations, and promises, and the concealment of material facts.

24. The fraudulent scheme operated and was carried out, in substance, as described in Paragraphs 19 through 21 of this Indictment.

B. USE OF THE WIRES

25. On or about June 19, 2020, in Orange County, within the Central District of California, and elsewhere, defendant HO, Co-Conspirator Dinh, and others known and unknown to the Grand Jury, aiding and abetting each other, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of, by means of wire communications in interstate commerce, a PPP loan application in the name of Global Prestige from Westminster, California, to PayPal via a server outside the State of California.

9

## COUNTS THREE THROUGH FOUR

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a) & (b)]

26. The Grand Jury re-alleges paragraphs 1 through 17, and 19 through 21 of this Indictment here.

27. On or about the dates set for below, in Orange County, within the Central District of California, and elsewhere, defendant HO, together with Co-Conspirator Dinh and others known and unknown to the Grand Jury, aiding and abetting each other, knowingly conducted, and willfully caused others to conduct, the following financial transactions in and affecting interstate commerce involving the proceeds of specified unlawful activity, that is, conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349, and wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that property involved in such financial transactions represented the proceeds of some form of unlawful activity and knowing that the financial transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of such proceeds:

| COUNT | DATE | TRANSACTION |
|---|---|---|
| THREE | 9/9/20 | The transfer of approximately $9,862 from the Global Prestige Checking Account to a Prestige Property account via Check #1549 drawn on the Global Prestige Account |
| FOUR | 9/9/20 | The transfer of approximately $9,862 from the Global Prestige Checking Account to a Prestige Property account via Check #1551 drawn on the Global Prestige Account |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the conviction of defendant MATTHEW HOANG HO, also known as "Mat Hoang Ho," of the offenses set forth in any of Counts One and Two of this Indictment.

2. Defendant HO, if so convicted, shall forfeit to the United States of America the following:

   (a) all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

   (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant HO, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of defendant HO, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of the conviction of defendant MATTHEW HOANG HO, also known as "Mat Hoang Ho," of the offenses set forth in any of Counts Three and Four of this Indictment.

2. Defendant HO, if so convicted, shall forfeit to the United States of America the following:

(a) Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), defendant HO, if so convicted, shall forfeit substitute property, if, by any act or omission of defendant HO, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an

intermediary who handled but did not retain the property in the course of the money laundering offense unless defendant HO, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

                                          A TRUE BILL

                                          /S/
                                        Foreperson

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

KRISTEN A. WILLIAMS
Assistant United States Attorney
Deputy Chief, Major Frauds Section

ROGER A. HSIEH
Assistant United States Attorney
Major Frauds Section

GLENN S. LEON
Deputy Chief, Fraud Section
United States Department of Justice

JUSTIN M. WOODARD
Assistant Chief, Fraud Section
Criminal Division
United States Department of Justice

HELEN H. LEE
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice